## Grace & Hyde Company v. Joseph H. Strong, Administrator.

### Gen. No. 12,502.

1. DECLARATION—*when charging negligence sufficient after verdict.* A declaration is sufficient after verdict which avers that the plaintiff's intestate was employed by the defendant as a laborer in digging trenches; that it was the duty of the defendant to furnish plaintiff's intestate with a safe place in which to work; that the defendant ordered the plaintiff's intestate to dig in a trench alongside of a high brick wall; that the defendant knew and the plaintiff's intestate did not know, that it was dangerous to dig near said wall, and that while the plaintiff's intestate was so digging and in the exercise of due care for his own safety, the wall fell upon and crushed him.

2. VERDICT—*when not disturbed as against evidence.* The Appellate Court will not set aside a verdict as against the weight of the evidence unless clearly and manifestly so.

3. INSTRUCTIONS—*extent of obligation of court to give.* Where a court has in its opinion fully instructed the jury, he is justified in refusing to give all other instructions tendered.

4. REVERSAL—*when will not be ordered.* Records without fault are seldom made and a reversal should not be awarded where substantial justice has been done.

5. NEW CAUSE OF ACTION—*when amendment does not set up.* An amendment which corrects the names of some of the next of kin of the deceased as originally averred, does not set up a new cause of action.

6. PECUNIARY LOSS—*when presumption of, exists in action for death caused by alleged wrongful act.* Where it appears that the deceased left a mother and father, a presumption of pecuniary loss will be indulged.

(336)

7. SAFE PLACE TO WORK—*right of servant to assume that master has provided.* A servant ordered by his master to work in a certain place may assume that such place is reasonably safe, unless the danger is so obvious that a reasonably prudent man would not assume the risk.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook County; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed June 14, 1906.

**Statement by the Court.** Appellee recovered a judgment in the Circuit Court against the appellant in the sum of $2,000. The case comes to us on appeal.

At the time of the trial there was but one count in the declaration, which alleged that April 7, 1902, appellant was engaged in digging trenches and building walls, etc., and the deceased, Patrick J. Gannon, was then employed by appellant as a laborer to dig said trenches as ordered by appellant; that it was the duty of appellant to furnish the deceased with a safe place to work and not to order him to work in any place dangerous to the life or limb of the deceased. "Yet the defendant, not regarding its duty in that behalf, carelessly, negligently and wilfully set the deceased to work digging in a trench alongside of which was a high and thick brick wall; and plaintiff avers that defendant then and there knew it was dangerous to work near said brick wall and that it was dangerous to dig alongside of said brick wall, and thereby dig away the earth supporting said wall. And plaintiff further avers that the deceased did not know it was dangerous to so dig alongside of said wall. And plaintiff avers that while said deceased was digging said trench alongside of said wall, as ordered by said defendant, and exercising all due care and diligence for his own safety in this behalf, said wall, by the digging away as aforesaid of the earth supporting said wall, suddenly fell over and upon the deceased and crushed said deceased, from the effects of which said deceased then and there died."

It is then alleged that the deceased left him surviving

his father and mother, five brothers and nine sisters, naming each of them, his next of kin, and that by reason of the death of said Patrick said next of kin have been and are deprived of their means of support, etc., etc.

May 6, 1905, the declaration was amended by inserting the words "a corporation" after the words "Grace & Hyde Company" wherever the latter words occur.

May 27, 1905, the declaration was again amended by changing the first names of the four married sisters from the first names of their respective husbands to their respective feminine names.

To this latter amendment appellant filed a plea of the two years' Statute of Limitations; to which appellee demurred. The court sustained the demurrer, and appellant excepted.

F. J. CANTY, J. C. M. CLOW and FRANK M. COX, for appellant; H. E. LONG, of counsel.

FRANCIS E. DONOGHUE, for appellee; DANIEL V. GALLERY, of counsel.

MR. JUSTICE BALL delivered the opinion of the court.

Appellant contends that the declaration fails to state a cause of action.

It is stated therein that the deceased was employed by appellant as a laborer in digging trenches, and that it was its duty to furnish him a safe place in which to work; that appellant ordered him to dig in a trench alongside a high brick wall; that appellant knew and deceased did not know that it was dangerous to dig near said wall; and that while he was so digging and in the exercise of due care for his own safety, the wall fell upon him and crushed him.

Proof of these allegations would make a *prima facie* case of negligence upon the part of appellant. We think this declaration would be good as against a general demurrer, and that it is clearly good after verdict. Consolidated Coal Co. v. Wombacher, 134 Ill. 63.

The second contention of appellant is that the proof fails

to. show that the wall was dangerous at the time the deceased began digging alongside of it.

The evidence shows that appellant was building a railway station in the city of Chicago. The ditches dug for the foundations were about fourteen feet in depth. The soil was sandy and saturated with water. To prevent the sides of the ditches from falling in, it was necessary to sheet-pile them. As a rule this was done as fast as the ditch was deepened. The ditch in which the deceased was fatally injured ran north and south. Work began at the south end. As the workmen approached the north end it ran into an old boiler room, upon the west side of which was a brick wall about eight feet high. West of this wall the earth was piled against it to its very top. The bottom of the ditch when completed was to be four or five feet below the floor of the boiler room and from two to three feet below the foundation of the wall. The ditch was to be dug alongside and a foot or two east of this wall. Appellant was represented on this work by Frank Mischoe, superintendent of construction, Robert Murphy, whose duty it was to brace the sheeting, Edward Cahill, foreman of the laborers in the ditch, and Martin Mangan, a "straw boss" under Murphy.

The deceased met his death Monday forenoon. · The evidence of appellee tends to prove that the Saturday afternoon next prior to the accident Mangan said to Cahill: "Cahill, I would not send the men down there (into the ditch) Monday morning until that wall is braced up;" that Cahill looked at it and said, "Oh, leave it go, it is all right." That Monday morning Mangan said to Murphy, "That wall is dangerous in case the men excavate without bracing it;" and Murphy replied, "To hell with it, it is good enough." That Mangan and Halloran, in the presence and hearing of deceased and other workmen, said to the foreman, "How about this wall? Wouldn't it be better if we take it down? It's kind of dangerous," and the foreman replied, "Well, go ahead and break that floor up and dig down there and pass the sheeting down in front of the wall;

that wall .is all right." And that after this conversation Cahill walked over to where Mischoe was standing, talked with him, and then came back to the men and told them all to go to work, that the wall was ·all right. This. evidence is given by witnesses Mangan, Schol and Maloney. It is true that the testimony of Murphy and Cahill introduced by appellant contradicts this evidence; but it was for the jury, who saw and heard all these witnesses, to say on which side the truth lay. When the evidence presented upon an issue is contradictory and irreconcilable, and the jury have found in favor of one of the parties, we are powerless to disturb that finding, unless we believe from a consideration of all the evidence that the finding is manifestly and clearly against the weight of the evidence. This rule is so well settled in this state that we need not support it by the citation of authorities.

Cahill was in charge of these workmen and Mischoe was at the ditch several times that morning before the accident.

The men went to work in the ditch at 8 A. M. In about two hours' time they reached the south end of the wall and began digging alongside it. · Between 10:30 and 11 A. M. the wall began to give way and Mischoe, seeing the danger, called out to the men in the ditch, " Look out below," or " Look out, men." The workmen attempted to get out of danger, and all but the deceased escaped. He was caught by the falling wall and ·was so injured that he died the following day. Appellant had placed no sheeting in front of this wall up to the time of the accident. There is sufficient evidence in the record to sustain the verdict upon the issue of the negligence of the defendant.

Appellant presented to the trial judge and·asked him to give thirty-nine instructions. The issues involved were few and simple. We can see no object to be accomplished by tendering so great a number of instructions, unless it was to confuse the judge and to inject error into the record. The court gave thirteen of these instructions as asked, and modified two and gave them as modified. There is no

Grace & Hyde Co. v. Strong.

error in these modifications. The remaining twenty-four he marked "refused."

We are of the opinion that those given covered the issues in the case and fully and fairly instructed the jury as to the law applicable to them. We have laboriously gone over the refused instructions, but will not extend this opinion by reciting in detail the reasons why we think the twenty-four were properly refused. After the court has fully instructed the jury as to the law of the case, he is justified, if he sees fit so to do, in refusing all other instructions tendered to him. Citizens G. & H. Co. v. O'Brien, 19 Ill. App. 234.

Refused instruction No. 17 told the jury that it was their duty to consider the case the same as they would a case between two private persons, instead of a case in which the defendant is a corporation. This instruction might well have been given, as the declaration described Grace & Hyde as a corporation; but the court was seemingly misled by the answers of its counsel to his question asked one day and repeated the next, "Is there any evidence in this case that the defendant is a corporation?" To which counsel for defendant answered, "No, sir, not a word." If it was error to refuse this instruction defendant's counsel caused that error to be committed, and, therefore, complaint upon their part is unavailing. In a case where substantial justice has been done, and we are of the opinion that this case belongs to that class, we would not order a reversal for the refusal of such an instruction. A record without fault is seldom built up, and there should be an end to litigation as soon as substantial justice is reached.

Appellant contends that the court erred in sustaining the demurrer to appellant's plea of the Statute of Limitations to the amendment of May 27, 1905, by which the true names of the sisters of deceased are stated, because it was made more than two years after the date of the accident. There in no merit in this contention. It is perfectly clear that this amendment did not introduce a new cause of action. Further, the names of the father and of the mother

and of the brothers were correctly stated in the original declaration. The statement of the true name of one heir makes a good declaration in that particular. Appellant is not concerned in the distribution of the proceeds of this judgment. That duty falls upon and is exercised by the Probate Court. United Breweries Co. v. O'Donnell, 221 Ill. 340.

Appellant says that the judgment is excessive. The reason given is that, as the evidence shows, that the brothers and sisters of deceased supported themselves and suffered no pecuniary loss by reason of his death, and no recovery could be had for more than nominal damages in behalf of such brothers and sisters, therefore the verdict and judgment are clearly excessive and contrary to law. This is a *non sequitur*. As we have said, the declaration alleged that the deceased left his father and mother him surviving. In such case the law presumes there has been pecuniary loss. City of Chicago v. Scholten, 75 Ill. 471.

In O. & M. Ry. Co. v. Wangelin, 152 Ill. 138, where the only next of kin was a sister, to whose support the deceased had contributed for several years, though earning but $50 per month, a judgment for $2,000 was affirmed. The cases of Chicago Bridge Co. v. La Mantia, 112 Ill. App. 43; Chicago Elec. Tr. Co. v. Kinnare, 115 Ill. 117; N. Chicago St. Ry. Co. v. Brodie, 156 Ill. 317; and C., P. & St. L. Ry. Co. v. Woolridge, 174 Ill. 330, are easily distinguished from and are not controlling in the case at bar. In this case the deceased was about thirty-two years old, an unmarried, sober, industrious and healthy man. He was earning at the time of his death from $65 to $70 per month. He was born and reared in Ireland, but had been in this country about ten years. His brother Thomas says, and there is no evidence to the contrary, "Joe (the deceased) contributed in a way to the support of his parents during his lifetime. He sent home from $5 to $10 monthly from his wages."

The statute gives the jury a large discretion as to the amount of the damages. It reads, "And in every such action the jury may give such damages as they shall deem a

Grace & Hyde Co. v. Strong.

fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person." Sec. 2, Ch. 70, R. S.

In our opinion the verdict is not excessive.

It was the duty of appellant to furnish the deceased a safe place to work, and to keep that place reasonably safe during all the time it directed him to work therein. This rule is elementary in this state. Appellant might have taken this wall down in advance of the digging, or it might have faced it with sheeting, properly braced, as the work progressed, and thus prevented the wall falling on the workmen. It did neither, but, as we must infer from the verdict, set the deceased and his fellows at work in a place of danger without warning them of that danger.

A servant ordered by his master to work in a certain place may assume that such place is reasonably safe, unless the danger is so obvious that a reasonably prudent man would not assume the risk. In Wells v. Bourdages, 193 Ill. 333, the court say: "And we have held that where a servant, in obedience to a command from one having authority, is performing an act the performance of which is attended with a degree of danger, it is not required that the servant shall balance the degree of danger and decide with absolute certainty whether he must refrain from it; and his knowledge of the attendant danger will not defeat his right of recovery, if in obeying the command of the master he acted with that degree of prudence that an ordinarily prudent man would have used under the circumstances."

In Ross v. Shanley, 185 Ill. 393, it is said: "Appellee was not required to make a critical and careful examination of his surroundings at the place where he was set to work by the foreman. We think it was properly left to the jury to determine whether appellant's foreman exercised such reasonable and ordinary care to see that the place where he ordered appellee to work was reasonably safe before he sent him there to work, and also whether

appellee knew or should have known the danger to which he was exposed."

See also Offutt v. World's Columbian Exp. Co., 175 Ill. 472; Western Stone Co. v. Muscial, 196 Ill. 385; Barnett & Record Co. v. Schlapka, 208 Ill. 436. We do not think that the question of the assumption of the risk by the deceased is an issue in this case. Under the law and the evidence we cannot set aside this verdict.

The judgment of the Circuit Court is affirmed.

*Affirmed.*